40281. SINCLAIR REFINING COMPANY
v. REDDING et al.

DECIDED SEPTEMBER 25, 1963—
REHEARING DENIED OCTOBER 14, 1963.

*Perry, Walters & Langstaff, Jesse W. Walters,* for plaintiff in error.

*Whelchel & Whelchel, James C. Whelchel, Moore & Moore, Lamar Moore, Emory M. Hiers,* contra.

EBERHARDT, Judge. ■ Sinclair argues its general demurrer, renewed after an amendment striking from the petition allegations of the Moultrie city ordinance. It also contends that the petition was not good because the parking meter could not be a distraction. This latter contention was laid to rest in the prior appeal, *Redding v. Sinclair Refining Co.,* 105 Ga. App. 375, supra, which may represent the outer limit of the distraction doctrine. The former contention must also fail in the light of *Colonial Stores v. Owens,* 107 Ga. App. 436 (130 SE2d 616), and *Haygood v. City of Marietta,* 108 Ga. App. 99 (131 SE2d 856), both decided subsequently to the original appearance of this case and both distraction cases in which no city ordinance was pled. The renewed general demurrer was properly overruled.

■ However, Sinclair's motion for a directed verdict and judgment notwithstanding the verdict present a different problem.

The amended petition sought to predicate Sinclair's liability on an agency relationship with the station operators. The evidence failed to support any agency relationship or even that the station operators placed the sign in question in the position it occupied when plaintiff was injured.

Recognizing her failure to prove this aspect of the action, plaintiff advances various other theories. The evidence pointed to in support of these theories was admitted without objection and the petition may be considered amended in this respect under the rule of *Harvey v. DeWeill,* 102 Ga. App. 394 (116 SE2d 747), *Fulton Hospital v. McDonald,* 106 Ga. App. 783 (128 SE2d 539), and similar cases.

These additional theories are that (a) Sinclair reserved in its lease to Justice and Hood the right of entry for an inspection of the station and was therefore liable for the "defect" of the sign placement in its location by the parking meter, (b) the sign was at or near the parking meter location at the time Sinclair leased the station and therefore it is chargeable with notice of and is responsible for the "defect" of the sign placement, and (c) Sinclair owned the sign and was therefore responsible for it.

■ Plaintiff contends that since the written lease that Sinclair had executed as lessor, and which it thought the lessees had executed[1] and under which it thought the lessees to be in possession, contained a reservation of the right on the part of Sinclair to enter "for the purpose of examination and inspection of the station and any property of the lessor located thereon," it must be held liable for the injuries of plaintiff resulting from the improper location of the sign, citing *City of Dalton v. Anderson,* 72 Ga. App. 109 (33 SE2d 115). A reading of that case reveals that it dealt with the duty of the landlord to make repairs to *defects in the premises* that might have been disclosed by ordinary care in making inspection. There a shed attached to a building on the premises fell on the plaintiff's wife. At page

---

[1]Justice and Hood denied signing the lease, contending they had an oral lease only.

112 in *Anderson,* supra, the court said: "The liability of the owner in such case is for injuries resulting from the failure to exercise ordinary care in inspecting the premises and repairing defects which would have been discovered if ordinary care had been exercised in inspecting them. The owner would not be liable for injuries resulting from defective premises, no matter how they came to exist, if she did not have notice of them and had exercised ordinary care in inspecting the premises."

It is obvious that the court was dealing only with the matter of *defects in the premises* in that case. It did not hold, and the ruling there should not be extended to impose on the owner a duty to keep up with the manner in which the tenant, or some employee of the tenant, or some third party, may have placed movable personalty on the premises from day to day, or even from time to time during the day. That would be an unreasonable burden. Defects in the premises, such as were dealt with in *Anderson,* are matters that are continuing in nature and thus calculated to come to the attention of the owner upon making inspections. They may result from faulty construction or they may come on gradually, perhaps getting a bit worse from day to day as time goes on, until a dangerous or unsafe condition obtains. The only change calculated to come about unless repairs are made is a further deterioration.

But the placement of items of personalty, such as a sign of the type here involved, is something that may change frequently and at any time. It may be in a perfectly safe position at one time of the day and at another, even a few minutes later, in an unsafe position. It is something that can and may be moved at will by the tenant, his employees or some third party. If the sign had been *permanently affixed* in an unsafe position or if it had been in a defective condition the rule of *Anderson* might have been applicable. But neither appears from the evidence here.

Ordinarily a business establishment will have a great many items of movable personalty on the premises. Take for example the supermarket with its stacks of merchandise in the aisles, its carts and numerous other items. These are moved and changed from day to day. Or take a tobacco sales warehouse, where

there are many tobacco baskets, hand trucks, scales and other things. These may and often do belong to the owner of the warehouse but are used by the tenant in the conduct of his business. Does a reservation in the lease of the right to enter and inspect the premises by the landlord place upon him the burden of continually going there and directing the tenant as to how and where these items should be placed? We think not. But if there should be a *defect in the premises*, in the floor, the walls, the ceiling, etc., or in equipment which may constitute a part of the premises, that ought to have been discovered on a reasonable inspection and injury results therefrom, the situation is different and liability will attach under *Anderson*.

Even if the improper placement of the sign be regarded as a "defect" (though we do not so regard it), it appears that a reasonable inspection by Sinclair would not have disclosed it. There was no evidence as to who placed the sign or when it was so placed. W. E. Hood, one of the lessees and who was active in the operation of the service station, testified that he and Justice leased the station and equipment from Sinclair and that the sign was at the station when they leased it. When asked about the location of the sign he testified: "Q. Was that sign there when you took over the operation of that station? A. Yes sir. Q. Sitting right out there on the sidewalk when you took over the operation of the station? A. Yes sir." But he also testified: "Q. So on that particular day [when plaintiff was injured] you don't know exactly where the sign was? A. *I know it never sit* [sic] *there before.*" Thus he testified that although the sign was on the sidewalk when he took over operation of the station, it was not then and was not at any time prior to the day plaintiff was injured placed at or near the parking meter.

It is to be remembered that this is a *distraction* case. It was the allegations of distraction *by the parking meter*[2] in which

---

[2]It is strongly urged by plaintiff in error that the parking meter, so widely used as to have become an accepted and normal part of our urban life and economy, is not, per se, a distraction. Be that as it may, it is settled as the law of the case on the prior appeal that it may have been a distraction under the facts here.

plaintiff was required to place her money that saved the petition from general demurrer. *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, supra. But for plaintiff's testimony that when she went to put money into the meter "I had my mind on the meter and I wasn't thinking about the feet [of the sign]. . . I wasn't thinking about anything being there to catch my foot and throw me down," the motion for a directed verdict on the ground that the plaintiff could have avoided the consequences of the defendant's negligence, if any, by the exercise of ordinary care would doubtless have been sustained. The accident happened about midafternoon on a fair day. There was no crowd of people or other thing on the sidewalk to distract her attention, save the parking meter. She admitted that she saw the sign when she approached the meter, saying: "As I went up there I saw this sign standing up there pretty close to the meter, but I just didn't remember it. I was busy at my own work putting the money in the meter and watching it to see how it was and everything and I forgot all about the meter, I mean the sign, and I never thought about the feet of it. I didn't see the feet—I saw the sign, but I didn't see the feet . . ." Her husband, who was along with her when she was injured, testified: "Q. Nothing unusual was happening around there to create any excitement prior to the time your wife fell, was it? A. Not that I know of. Q. The sign which you say she fell over was clearly visible to anybody that looked, wasn't it? A. Yes sir, I guess it was. Q. Anybody in the world could see it if they looked? A. They could see the sign. Q. There wasn't nothing hiding the brace or support or feet as you call it, was there? A. No, I didn't see anything as far as hiding them but being right down like they were at the meter. Q. Any one looking could have seen them without any difficulty, couldn't they? A. If they looked down they could. Q. Any one looking where they were going could have seen that sign and all about it, wouldn't they? A. If they looked down they could have seen it, but so close to the meter like it was . . ."

Under this testimony from the plaintiff and her husband it is obvious that *except for the distraction of the parking meter*, the situation would clearly fall into the category of *National Bellas-Hess Co. v. Patrick*, 49 Ga. App. 280 (175 SE 255); *McCrory*

*Stores Corp. v. Ahern,* 65 Ga. App. 334 (15 SE2d 797); *Tinley v. F. W. Woolworth Co.,* 70 Ga. App. 390 (28 SE2d 322); *Lane Drug Stores v. Story,* 72 Ga. App. 886 (35 SE2d 472); *McMullan v. Kroger Co.,* 84 Ga. App. 195 (65 SE2d 420); *Delay v. Rich's, Inc.,* 86 Ga. App. 30 (70 SE2d 546); *Moore v. Kroger Co.,* 87 Ga. App. 581 (74 SE2d 481); *Rich's, Inc. v. South,* 91 Ga. App. 487 (85 SE2d 774); *670 New Street, Inc. v. Smith,* 107 Ga. App. 539 (130 SE2d 773), and others of like tenor, all applying *Code* § 105-603.

Consequently, for constructive notice of the location of the sign on the sidewalk to be effective against Sinclair it must have included notice of its location at a place where the attention of one who might stumble and fall over it was calculated to be distracted. Ergo, the testimony of Hood that the sign was on the sidewalk when he and Justice took over the station could not afford that notice because he also testified that it had never been in proximity to the parking meter until the day plaintiff was injured. There was no evidence as to who placed it there or even as to how long it had been there on that day. See *Miller v. Farmers &c. Bank,* 107 Ga. App. 781 (131 SE2d 211).

 Plaintiff's argument on its second theory is much the same except that it is contended that Sinclair is charged with knowledge because the premises were leased with the sign on the sidewalk. She cites *Robertson v. Liggett Drug Co.,* 81 Ga. App. 850 (60 SE2d 268). Much of the rationale relative to the sign as a "defect" in the premises used in (a), supra, answers this contention also. Additionally, it fails to find support in the evidence for the reasons stated above, even if improper location could be a "defect" chargeable to the landlord.

 As to plaintiff's last theory, we think it apparent that the mere ownership of the sign, with nothing more, could not possibly be a basis of liability on Sinclair's part. This contention may include the conceivable situation of Sinclair's leaving the sign in a dangerous position on the sidewalk, thus obviating the necessity for showing who moved it to the specific location where plaintiff was injured. Without ruling as to the legal sufficiency of this theory, we do not see how it has any application here under the testimony referred to above. There is simply no show-

ing that Sinclair had any notice, actual or constructive, that the sign was ever in any dangerous position on the sidewalk or that this defendant had any connection with placing it in the location where plaintiff was injured. For a somewhat similar situation in which a like conclusion was reached by the court see *Pulliam v. Walgreen Drug Stores*, 108 Ga. App. 90 (131 SE2d 801).

*Reversed with direction that a judgment for defendant Sinclair be entered, notwithstanding the verdict. Felton, C. J., and Russell, J., concur.*